# United States Court of Appeals

## For the First Circuit

No. 09-1571

CARL DREW,

Petitioner, Appellant,

v.

DUANE J. MACEACHERN,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Boudin, Gajarsa,[*] and Thompson, Circuit Judges.

Cathryn A. Neaves for petitioner, appellant.
Natalie S. Monroe, Assistant Attorney General, Criminal Bureau, with whom Martha Coakley, Attorney General, was on brief, for respondent, appellee.

September 9, 2010

---

[*]    Of the Federal Circuit, sitting by designation.

**GAJARSA**, <u>Circuit Judge</u>.  The issue before the court is whether an application for state post-conviction relief was "pending" within the meaning of the tolling provision of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d)(2), and, if not, whether the petitioner is entitled to equitable tolling of the AEDPA's limitations period. Carl Drew appeals from the U.S. District Court for the District of Massachusetts's dismissal of his petition for writ of habeas corpus.  The district court dismissed Mr. Drew's petition for lack of jurisdiction, holding that his petition was time-barred under § 2244(d)(1)(A) and that he is not entitled to equitable tolling. We affirm.

**I.**

The relevant facts are not in dispute.  The Massachusetts Supreme Judicial Court ("SJC") provides "extremely broad plenary review" of convictions for a capital crime on direct appeal under chapter 278, section 33E of the Massachusetts General Laws.[1] <u>Trigones</u> v. <u>Attorney General</u>, 652 N.E.2d 893, 895 (Mass. 1995); <u>see also</u> <u>Commonwealth</u> v. <u>Randolph</u>, 780 N.E.2d 58, 67 (Mass. 2002) ("[A] defendant's conviction in a capital case . . . undergo[es] the

---

[1] "The Massachusetts murder statute still provides that the death penalty is available for first-degree murder committed with extreme atrocity or cruelty, but the SJC has ruled that the death penalty violated a provision of the state constitution . . . ." <u>Obershaw</u> v. <u>Lanman</u>, 453 F.3d 56, 60 n.2 (1st Cir. 2006) (internal citations omitted).

exacting scrutiny of plenary review under [section] 33E."
(alterations added)). But "[a]fter receiving this plenary review,
a capital defendant may not appeal [to the SJC] from a decision on
a postconviction motion unless that motion raises a 'new and
substantial question'" as set forth in a "gatekeeper" petition to
a single justice of the SJC. Trigones, 652 N.E.2d at 895
(alteration added) (quoting Mass. Gen. Laws, ch. 278, § 33E); see
also Randolph, 780 N.E.2d at 64 n.7. In a section 33E petition, a
capital defendant files a petition for leave to appeal to the full
SJC with a single justice of the SJC, who is commonly referred to
as the "gatekeeper." Commonwealth v. Stote, 922 N.E.2d 768, 771
(Mass. 2010) (referring to the single justice in a section 33E
petition as the gatekeeper); Commonwealth v. Herbert, 838 N.E.2d
1236, 1237 (Mass. 2005) (rescript) (same). If the single justice
determines that the petitioner raises both "new and substantial"
issues, the justice will grant the petitioner leave to appeal to
the full SJC for review. Mass. Gen. Laws, ch. 278, § 33E (2008);
see also Pina v. Maloney, 565 F.3d 48, 51 n.2 (1st Cir. 2009);
Trigones, 652 N.E.2d at 895-96.

On March 13, 1981, a jury convicted Mr. Drew of first-
degree murder in the Superior Court, and he was sentenced to life
in prison without parole. Over the next twenty-two years, the SJC
would consider a direct appeal from Mr. Drew's murder conviction
and appeals from his four denied motions for a new trial. As

explained below, Mr. Drew's current appeal centers on two separate gatekeeper petitions that he filed in 1992 and 2003. Those petitions concerned his third and fourth motions for a new trial.

Mr. Drew filed his first two motions for a new trial in the Superior Court on March 30, 1981, and February 17, 1983, respectively. After the Superior Court denied both motions, the SJC consolidated Mr. Drew's direct appeal from his murder conviction and his appeals from the Superior Court's denial of his two motions for a new trial. On March 12, 1986, the SJC affirmed Mr. Drew's conviction and the denial of his two motions for a new trial. See Commonwealth v. Drew ("Drew I"), 489 N.E.2d 1233, 1236 (Mass. 1986).

Nearly six years later, Mr. Drew filed his third motion for a new trial as a pro se litigant. In this motion, Mr. Drew alleged for the first time that his trial counsel and previous appellate counsel were ineffective, violating his Sixth Amendment right to the effective assistance of counsel. See Commonwealth v. Drew ("Drew II"), No. SJ-2005-0074, slip op. at 6-7, 9 (Mass. Oct. 17, 2005). The Superior Court denied Mr. Drew's third motion for a new trial.

Again acting pro se, Mr. Drew timely filed a section 33E gatekeeper petition with the single justice on April 30, 1992. Commonwealth v. Drew ("Drew III"), 856 N.E.2d 808, 811 (Mass. 2006). In the two and a half years after Mr. Drew filed this

-4-

initial gatekeeper petition, Massachusetts appointed four different attorneys to assist him with his petition, but they all neglected to make filings on his behalf. See Drew III, 856 N.E.2d at 811; Drew II, slip op. at 10 n.10. After the gatekeeper issued three orders to show cause, the justice refused to grant another continuance and dismissed Mr. Drew's petition for lack of prosecution on December 15, 1994. Drew III, 856 N.E.2d at 811; Drew II, slip op. at 10 n.10.

In September 1995, Massachusetts appointed a new counsel for Mr. Drew. Drew II, slip op. at 11. After inquiring about the status of Mr. Drew's initial gatekeeper petition, the newly appointed counsel learned that it had been dismissed. See Drew III, 856 N.E.2d at 811. Upon learning of the dismissal, however, counsel did not move for reconsideration of the dismissal nor file a petition for writ of habeas corpus in federal court.

Eight years later, on September 16, 2003, the same counsel filed a fourth motion for a new trial, asserting, inter alia, the same ineffective-assistance-of-counsel claims that Mr. Drew presented in his 1992 gatekeeper petition. After an eleven-day evidentiary hearing, the Superior Court denied Mr. Drew's fourth motion for a new trial.

Represented by the same counsel, Mr. Drew then filed his second gatekeeper petition on February 28, 2005. This petition was granted in part, allowing the full SJC to hear Mr. Drew's appeal

with respect to some of his claims, namely that his trial counsel was constitutionally ineffective. Drew II, slip op. at 14; see also Drew III, 856 N.E.2d at 814-20. To satisfy section 33E's requirement that the gatekeeper petition raise "new" issues, the single justice treated the second gatekeeper petition as though it were Mr. Drew's first: "I am not prepared to preclude [Mr.] Drew from bringing substantial issues before the court because his lawyer proceeded to bring a new motion . . . rather than resurrect an old appeal that court appointed counsel failed to prosecute." Drew II, slip op. at 11 (alterations added). The single justice opined that he was "thus inclined to treat [the ineffective-assistance claims] of [Mr.] Drew's petition as if [they] represent[ed] a continuation of the 1992 appeal." Id. (alterations added). The single justice denied the second gatekeeper petition in all other respects. Id. at 14.

On appeal before the full court, the SJC reasoned that Mr. Drew could have raised his ineffective-assistance claims in his second motion for a new trial and thus had waived those claims. See Drew III, 856 N.E.2d at 813. Nevertheless, the SJC reviewed his ineffective-assistance claims for a substantial risk of a miscarriage of justice, but denied relief. Id. at 814-20. On December 20, 2006, the SJC denied Mr. Drew's petition for rehearing. And on May 18, 2007, the U.S. Supreme Court denied his petition for writ of certiorari. Drew v. Massachusetts, 550 U.S.

943 (2007) (mem.).

Not to be denied in his quest for relief, Mr. Drew filed a pro se petition for writ of habeas corpus in federal district court on December 20, 2007. The district court referred the matter to a magistrate judge for a Report and Recommendation ("R&R"). The R&R recommended that the district court dismiss Mr. Drew's habeas petition for lack of jurisdiction because he failed to file his petition within the AEDPA's one-year statute of limitations under 28 U.S.C. § 2244(d)(1)(A). The magistrate judge also found that the doctrine of equitable tolling did not apply to Mr. Drew's habeas petition. The district court adopted the R&R and dismissed the petition with prejudice. However, the district court noted that "because the issues are close, [it would] certify for appeal if requested." Addendum to Appellant's Br. 17 (alteration added).

Upon Mr. Drew's request, the district court certified his case for appeal, and Mr. Drew timely filed a notice of appeal. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253.

## II.

The federal courts have jurisdiction under 28 U.S.C. § 2254(a) to consider a state prisoner's petition for writ of habeas corpus when the petitioner alleges that he is in state custody in violation of the U.S. Constitution or federal law. Congress, however, placed limits on the federal courts' ability to grant a federal habeas petition. One of those limits is a statute

-7-

of limitations: "A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1) (2006). In a typical case, the clock on the one-year limitations period starts running when the state conviction becomes final: "The limitation period shall run from the . . . date on which the judgment became <u>final</u> by the conclusion of direct review or the expiration of the time for seeking such review." <u>Id.</u> § 2244(d)(1)(A) (emphasis added). For the purposes of § 2244(d)(1)(A), a conviction is final when the "availability of direct appeal to the state courts and to [the U.S. Supreme Court] has been exhausted." <u>Jimenez</u> v. <u>Quarterman</u>, 129 S. Ct. 681, 685 (2009) (alteration added) (internal quotation marks and citations omitted). Because the AEDPA affects prisoners convicted before its enactment, the federal courts of appeals have uniformly created a one-year grace period for prisoners whose state convictions became final before April 24, 1996--the day the AEDPA became effective. <u>See</u> <u>Duncan</u> v. <u>Walker</u>, 533 U.S. 167, 183 & n.1 (2001). Under this grace period, prisoners, like Mr. Drew, who were convicted before the AEDPA's effective date had until April 24, 1997, to file a habeas petition in federal district court. <u>See, e.g.</u>, <u>Gaskins</u> v. <u>Duval</u>, 183 F.3d 8, 9 (1st Cir. 1999).

Petitioners can, however, stop the clock on the AEDPA's statute of limitations. It has a tolling provision: "The time

-8-

during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

In sum, once a state conviction is final, the AEDPA's limitations period begins to run. If the petitioner files an application for state post-conviction relief within a year after the conviction is final, the limitations period is halted while the application is pending, i.e., the limitations period is tolled. For prisoners subject to the one-year grace period, their conviction is deemed "final" as of April 24, 1996, and the period begins to run.

This case concerns whether Mr. Drew's initial gatekeeper petition was "pending" within the meaning of § 2244(d)(2) as of April 24, 1997, and, if not, whether he is entitled to equitable tolling of the AEDPA's limitations period based on appointed counsels' seriatim neglect of his initial gatekeeper petition. We conclude that Mr. Drew's habeas petition is time-barred under § 2244(d)(1)(A) and that he is not entitled to equitable tolling.

**A. Tolling Under 28 U.S.C. § 2244(d)(2)**

We review de novo a district court's decision to dismiss a habeas petition as time-barred. Wood v. Spencer, 487 F.3d 1, 3 (1st Cir. 2007). Both parties agree that Mr. Drew's conviction became final on June 12, 1986, which is the day three months after

the SJC affirmed his conviction on direct appeal and the day on which his time to seek U.S. Supreme Court review expired. See Drew I, 489 N.E.2d at 1233, 1245. The parties further agree that Mr. Drew is subject to the one-year grace period. Consequently, the clock for the AEDPA's limitations period would have started running on April 24, 1996, unless Mr. Drew had "a properly filed application for State post-conviction or other collateral review . . . pending" during the grace period. 28 U.S.C. § 2244(d)(2). Therefore, we must decide whether Mr. Drew's initial gatekeeper petition was "pending" during the grace period within the meaning of § 2244(d)(2).

In Carey v. Saffold, 536 U.S. 214 (2002), the Supreme Court addressed the meaning of the term "pending" in § 2244(d)(2). The Court noted that "[t]he dictionary defines 'pending' . . . as 'in continuance' or 'not yet decided.'" Id. at 219 (quoting Webster's Third New International Dictionary 1669 (1993)). According to the Court, "[a]n application is pending as long as the ordinary state collateral review process is 'in continuance'--i.e., 'until the completion of' that process. In other words, until the application has achieved final resolution through the State's post-conviction procedures, by definition it remains 'pending.'" Id. at 219-20 (emphasis added). Based on this definition, the Court held that an application for state post-conviction relief is "pending" during the interval between a lower court's entry of judgment and

the filing of an appeal with a higher state court. Id. at 220-21. The Court remanded the case to the Ninth Circuit to determine whether the petitioner's four-and-a-half-month delay in filing his petition for an "original writ" was unreasonable under California's procedural rules. Id. at 225-27. Relevant to this appeal, the Court deferred to California's procedural rules to further the purposes of the AEDPA's tolling provision: "[I]t is the State's interests that the tolling provision seeks to protect, and the State, through its supreme court decisions or legislation, can explicate timing requirements . . . ." Id. at 223.

Saffold and our precedent show that a state's procedural rules control whether an application for state post-conviction relief is pending under § 2244(d)(2). See Saffold, 536 U.S. at 220 ("[U]ntil the application has achieved final resolution through the State's post-conviction procedures, by definition it remains 'pending.'"); Currie v. Matesanz, 281 F.3d 261, 267-68 (1st Cir. 2002) (interpreting "pending" in § 2244(d)(2) to include the gap between the date on which a trial court denied a petitioner's motion for a new trial and the date on which the petitioner filed a section 33E gatekeeper petition). Consequently, "an application for [state] post-conviction relief is pending 'from the time it is first filed until [the time it is] finally disposed of and further appellate review is unavailable under the particular state's procedures.'" Currie, 281 F.3d at 263 (alterations added) (quoting

<u>Bennett</u> v. <u>Artuz</u>, 199 F.3d 116, 120 (2d Cir. 1999)), <u>aff'd on other grounds</u>, 531 U.S. 4 (2000).  In Massachusetts, a single justice's decision to deny a gatekeeper petition is "final and unreviewable," <u>Herbert</u>, 838 N.E.2d at 1237 (internal quotation marks omitted), even when the single justice bases his opinion on procedural grounds, such as when a gatekeeper petition is dismissed as untimely, <u>see</u> <u>Commonwealth</u> v. <u>Nassar</u>, 908 N.E.2d 371, 372-73 (Mass. 2009) (rescript) (holding that a single justice's decision was "final and unreviewable" when the justice denied a gatekeeper petition as untimely); <u>Mains</u> v. <u>Commonwealth</u>, 739 N.E.2d 1125, 1131 n.10 (Mass. 2000) (holding that gatekeeper petitions must be filed within thirty days of the denial of a motion for a new trial).[2]

Based on <u>Saffold</u> and our precedent, Mr. Drew's initial gatekeeper petition ceased to be pending for the purposes of § 2244(d)(2) when it was dismissed for lack of prosecution on December 15, 1994.  Because the single justice dismissed Mr. Drew's initial gatekeeper petition, <u>see</u> <u>Drew III</u>, 856 N.E.2d at 811, the dismissal was "final and unreviewable," <u>Herbert</u>, 838 N.E.2d at 1237

---

[2] The SJC has stated that "[t]here may be some circumstances where the full court would consider whether a single justice erred by denying a gatekeeper petition on procedural grounds." <u>Nassar</u>, 908 N.E.2d at 373 n.2.  But Mr. Drew has not alleged that the single justice erred in dismissing his initial gatekeeper petition for lack of prosecution.  Consequently, we need not address whether a single justice's potential procedural error in dismissing a gatekeeper petition could affect a dismissed petition's status as "pending" under § 2244(d)(2) or a petitioner's entitlement to equitable tolling.

-12-

(internal quotation marks omitted).  With the imprimatur of a final and unreviewable dismissal, Mr. Drew's initial gatekeeper petition "achieved final resolution through [Massachusetts's] post-conviction procedures," Saffold, 536 U.S. at 220 (alteration added), and "further appellate review [was] unavailable under [Massachusetts's] procedures," Currie, 281 F.3d at 263 (alterations added) (internal quotation marks omitted).  Therefore, Mr. Drew's initial gatekeeper petition was not pending when the grace period expired on April 24, 1997.  As the district court properly held, Mr. Drew was time-barred under § 2244(d)(1)(A) from filing a federal habeas petition as of April 24, 1997.

Interpreting "pending" in § 2244(d)(2) to exclude applications for state post-conviction relief that a state's highest court dismissed on procedural grounds comports with how the federal courts of appeals have interpreted "pending" in similar cases.  A majority of federal courts of appeals have held that an untimely application for post-conviction relief that a state court reopens is not "pending" under § 2244(d)(2) "between the expiration of the time for appeal and the filing of a petition for belated appeal."  Streu v. Dormire, 557 F.3d 960, 966 (8th Cir. 2009); see also Moore v. Crosby, 321 F.3d 1377, 1380 (11th Cir. 2003); Allen v. Mitchell, 276 F.3d 183, 185-86 (4th Cir. 2001); Melancon v. Kaylo, 259 F.3d 401, 406-07 (5th Cir. 2001); Gibson v. Klinger, 232 F.3d 799, 806-07 (10th Cir. 2000); Fernandez v. Sternes,

-13-

227 F.3d 977, 979-81 (7th Cir. 2000). <u>But see</u> <u>Saffold</u> v. <u>Newland</u>, 250 F.3d 1262 (9th Cir. 2000), <u>vacated sub nom.</u> <u>Carey</u> v. <u>Saffold</u>, 536 U.S. 514 (2002).

Mr. Drew argues that his initial gatekeeper petition was pending from the date he first filed it, April 30, 1992, until the date the SJC denied his final petition for rehearing, December 20, 2006--even though the single justice dismissed his initial gatekeeper petition for failure to prosecute. Under Mr. Drew's reasoning, he had until December 20, 2007, to file his petition for writ of habeas corpus because the single justice deemed his second gatekeeper petition to be a continuation of the first. But the single justice did not reopen or reinstate Mr. Drew's initial gatekeeper petition.[3] Rather, the single justice treated the second gatekeeper petition as though it were Mr. Drew's first for the purposes of satisfying the requirement that a gatekeeper petition present "new" issues. <u>See</u> <u>Drew II</u>, slip op. at 11. The single justice did so to compensate for the four appointed counsels who failed to prosecute the initial petition: "I am thus inclined to treat [the ineffective-assistance claims] of [Mr.] Drew's

---

[3] Although the single justice did not in fact reopen or reinstate Mr. Drew's initial gatekeeper petition, the cases cited above, <u>see, e.g.</u>, <u>Streu</u>, 557 F.3d at 966, create doubt whether such a reopening and reinstatement for state law purposes would make the petition one that had been "pending" for federal habeas purposes throughout the lengthy period between its dismissal and its resurrection. However, we need not decide that issue for this circuit in this case.

-14-

petition as if [they] represent[ed] a continuation of the 1992 appeal." Drew II, slip op. at 11 (alterations added). The single justice's conclusion did not alter the fact that Mr. Drew's initial gatekeeper petition was dismissed. The dismissal of the initial gatekeeper petition for lack of prosecution terminated the proceeding, and the petition ceased to be pending.

In support of his argument, Mr. Drew relies on the Supreme Court's recent interpretation of the term "final" in § 2244(d)(1)(A). In Jimenez v. Quarterman, 129 S. Ct. 681 (2009), the Court determined that a conviction was "final" when the "availability of direct appeal to the state courts and to [the U.S. Supreme Court] has been exhausted." Id. at 685 (alterations added) (internal quotation marks and citations omitted). Based on this interpretation, the Court held that a petition is not "final" under § 2244(d)(1)(A) when a state court grants a petitioner the right to file an out-of-time direct appeal during state collateral review, but before the petitioner seeks federal habeas relief. Id. at 686.

According to Mr. Drew, Jimenez indicates that in extraordinary circumstances, state court action can change how the AEDPA's limitations period is tolled. Mr. Drew argues that the single justice's decision to treat Mr. Drew's second gatekeeper petition as though it were his first "altered the meaning of 'pending' in this particular case." Appellant's Br. 15-16. But the rule in Jimenez simply reinforces that Mr. Drew's conviction

was final after he exhausted his direct appeals to the SJC and the Supreme Court. See 129 S. Ct. at 685. Jimenez only addresses the term "final" in § 2244(d)(1)(A), not "pending" in § 2244(d)(2). Moreover, the Court's rule in Jimenez promoted the AEDPA's goal of giving state courts the opportunity to first address a constitutional challenge in an untimely appeal. Id. Similarly, holding that Mr. Drew's initial gatekeeper petition was not pending from 1994 to 2006 provides petitioners with an incentive to respect state procedural rules. "[I]t is the State's interests that the tolling provision seeks to protect, and the State, through its supreme court decisions or legislation, can explicate timing requirements . . . ." Saffold, 536 U.S. at 223. In Massachusetts, when a single justice dismisses a gatekeeper petition on procedural grounds, the dismissal is final and unreviewable, making the petition no longer pending.

## B. Equitable Tolling

We "review[] a district court's denial of equitable tolling for abuse of discretion." Trapp v. Spencer, 479 F.3d 53, 58 (1st Cir. 2007) (alteration added). Because Mr. Drew did not timely file his federal habeas petition, we must determine whether it was an abuse of discretion for the district court to not equitably toll the AEDPA's limitations period based on appointed counsels' seriatim neglect of his initial gatekeeper petition.

The Supreme Court recently held that "§ 2244(d) is

subject to equitable tolling in appropriate cases." Holland v. Florida, 130 S. Ct. 2549, 2560 (2010). The Court established a two-prong test: "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. at 2562 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).

In reference to the first prong, the Court stated that "[t]he diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." Id. at 2565 (internal quotation marks omitted). In reference to the second prong, the Court explained that "'a garden variety claim of excusable neglect,' such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." Id. at 2564 (quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990) and Lawrence v. Florida, 549 U.S. 327, 336 (2007)). Nevertheless, the Court made clear that egregious attorney neglect could constitute an extraordinary circumstance. Id. at 2564 (collecting cases).

Based on this two-prong test, the Court held that the petitioner had diligently pursued his rights by sending numerous letters concerning a federal habeas petition to his appointed counsel, who neglected to respond. Id. at 2565. However, the Court remanded the case to the Eleventh Circuit to determine in the

-17-

first instance whether counsel's failure to respond to petitioner's numerous letters, failure to accurately inform petitioner of the law, and failure to keep petitioner apprised of the status of his case constituted an extraordinary circumstance. Id. at 2564-65.

Mr. Drew fails to satisfy the two prongs for equitable tolling. First, Mr. Drew was not reasonably diligent in pursuing his rights for state post-conviction relief from September 1995 to September 2003. Although it is not clear from the record exactly when Mr. Drew became aware that his initial gatekeeper petition was dismissed, it can be reasonably assumed that Mr. Drew's newly appointed counsel informed him of the dismissal when counsel learned of it in September 1995. Mr. Drew has not produced any evidence that he was unaware of the dismissal and has offered no explanation as to why he did not pursue other relief between September 1995 and September 2003. See Appellant's Br. 21-23; Oral Argument at 3:46-4:53, Drew v. MacEachern, No. 09-1571, available at http://www.ca1.uscourts.gov/files/audio/audiorss.php. Absent evidence that Mr. Drew's counsel failed to keep Mr. Drew apprised of his petition's status, see Holland, 130 S. Ct. at 2564, we must assume that counsel fulfilled his professional responsibility to communicate with his client and attribute counsel's inaction to Mr. Drew, see Coleman v. Thompson, 501 U.S. 722, 753 (1991) ("[T]he attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the

-18-

risk of attorney error.'" (quoting <u>Murray</u> v. <u>Carrier</u>, 477 U.S. 478, 488 (1986))); Model Rules of Prof'l Conduct R. 1.4(a)(3) (2007) ("A lawyer shall . . . keep the client reasonably informed about the status of the matter . . . ."). After Mr. Drew discovered that his initial gatekeeper petition had been dismissed, he sat on his rights. Between September 1995 and September 2003, Mr. Drew did not file a petition to reopen the initial gatekeeper petition, did not file another gatekeeper petition, and did not take any other actions that could have potentially provided post-conviction relief. It was not until eight years after Massachusetts appointed him new counsel that a fourth motion for a new trial was filed. This eight-year hiatus demonstrates that Mr. Drew failed to diligently pursue his rights. Therefore, Mr. Drew is not entitled to equitable tolling because he has failed to show "'that he has been pursuing his rights diligently.'" <u>Holland</u>, 130 S. Ct. at 2562 (quoting <u>Pace</u>, 544 U.S. at 418).

Second, even if Mr. Drew had diligently pursued his rights, he has not alleged any extraordinary circumstance that would have prevented him from seeking post-conviction relief after discovering the dismissal of his initial gatekeeper petition. To be sure, the four appointed counsels' failure to take any action on Mr. Drew's behalf indicates extraordinary attorney neglect. <u>See</u> <u>Drew II</u>, slip op. at 10 n.10. But this failure by his attorneys to act diligently in pursuit of appropriate remedies occurred before

the AEDPA became law, and Mr. Drew has not submitted any evidence to support his argument that he was prevented from further pursuing post-conviction relief during the grace period. Although the first four counsels' neglect was egregious, it did nothing to prevent Mr. Drew's subsequent counsel from seeking appropriate relief after the initial gatekeeper petition was dismissed. The four appointed counsels' poor lawyering did not limit Mr. Drew's ability to seek an appropriate remedy during the grace period. Therefore, the district court did not abuse its discretion in denying Mr. Drew's request to equitably toll the period within which his petition had to be filed. Mr. Drew failed to show "'that some extraordinary circumstance stood in his way' and prevented [him from] timely filing" a federal habeas petition. Holland, 130 S. Ct. at 2562 (alteration added)(quoting Pace, 544 U.S. at 418).

**III.**

For the foregoing reasons, the judgment is **AFFIRMED.**