## COMMONWEALTH *vs.* RICHARD L. RANDOLPH.

Suffolk. September 4, 2002. - December 19, 2002.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Practice, Criminal,* Instructions to jury, Appeal, Assistance of counsel, New trial. *Waiver. Constitutional Law,* Assistance of counsel. *Homicide. Malice. Intoxication.*

Discussion of the waiver doctrine and the standard of review that is to be applied when this court considers the merits of an unpreserved claim. [293-296]

Discussion of the review undertaken when a claim is analyzed under the substantial risk of a miscarriage of justice standard. [297-298]

On a postappeal motion for a new trial in which it was contended that the trial judge failed to state in his charge to the jury that the Commonwealth was required to prove beyond a reasonable doubt that the defendant did not act on reasonable provocation for the jury to find him guilty of murder, there was no substantial risk of a miscarriage of justice where, although the judge impermissibly shifted the burden of proving an absence of provocation from the Commonwealth to the defense, the defendant was prejudiced by the error, and it could be inferred from the record that defense counsel's failure to object or raise a claim of error at an earlier date was not a reasonable tactical decision, it was not reasonable to conclude that the judge's error, viewed in the context of the entire trial, influenced the ultimate verdict. [298-301]

On a postappeal motion for a new trial in a murder case tried on a theory of deliberate premeditation, in which it was contended that the three-prong malice instruction given by the trial judge was erroneous, the judge's inclusion in instructions to the jury of all three prongs of malice did not create a substantial risk of a miscarriage of justice requiring a new trial where, given that the deliberate premeditation language used by the judge accurately conveyed the concept to the jury, the instruction on murder in the first degree did not prejudice the defendant. [301-302]

On a postappeal motion for a new trial in a murder case, there was no substantial risk of a miscarriage of justice created by the judge's instructions to the jury with regard to his description of the second and third prongs of malice where, because the jury found the defendant guilty of murder in the first degree on a theory of deliberate premeditation and therefore found a specific intent to kill beyond a reasonable doubt, any error in the instruction on the second or third prong of malice could have had no effect on the trial's outcome. [302]

On a postappeal motion for a new trial in a murder case, there was no error and thus no substantial risk of a miscarriage of justice created by the

judge's instructions to the jury on intoxication and the issue of premeditation. [302-303]

INDICTMENTS found and returned in the Superior Court Department on September 13, 1984.

Following review by this court, 415 Mass 364 (1993), a motion for a new trial, filed on January 19, 2000, was heard by *Charles T. Spurlock*, J.

A request for leave to appeal was heard by *Greaney*, J.

*Mary T. Rogers* for the defendant.

*Kajal K. Chattopadhyay*, Assistant District Attorney, for the Commonwealth.

COWIN, J. In 1986, the defendant was convicted by a jury of murder in the first degree based on deliberate premeditation. He was also convicted of armed assault in a dwelling with intent to commit a felony and assault and battery by means of a dangerous weapon. We affirmed his convictions, denied relief after a review of the entire record pursuant to G. L. c. 278, § 33E, and affirmed the denial of a motion for a new trial.[1] *Commonwealth* v. *Randolph*, 415 Mass. 364 (1993). In January, 2000, the defendant filed a second motion for a new trial challenging his conviction on multiple grounds, which motion was denied.[2] The defendant sought leave to appeal from the denial of the motion by petitioning a single justice of this court pursuant to the "gatekeeper" provision of G. L. c. 278, § 33E. A single justice allowed the defendant's petition with regard to allegations of possible error in the trial judge's instructions to the jury on murder (in both the first and second degrees), voluntary manslaughter, and intoxication, including questions of waiver and ineffective assistance of counsel relating to those instructions. We now affirm the denial of the motion.[3]

---

[1]Prior to his direct appeal, the defendant filed a motion for a new trial (pre-appeal motion) with the trial judge on the ground of newly discovered evidence. See *Commonwealth* v. *Randolph*, 415 Mass. 364, 367-368 (1993).

[2]The second motion judge was not the trial judge, who had retired prior to the filing of the second motion for a new trial.

[3]The defendant also asks us to reconsider the motion judge's apparent refusal to reduce the verdict to a lesser degree of guilt pursuant to Mass. R.

## I. *Facts.*

On August 2, 1984, Brian Golden and several other residents of Vallar Road in the East Boston section of Boston were involved in a dispute with the defendant and his brother, Leroy, about their reckless driving in the neighborhood. Shortly thereafter, the defendant threw a knife that pierced Brian Golden's eye. Golden died as a result of his injury. The sequence of events connecting these two incidents is hotly disputed, and, because this dispute is central to our resolution of the defendant's current claims and was not described in his original appeal, we detail both the Commonwealth's and defendant's versions of the facts.

### A. *The Commonwealth's Case.*

Linda Golden (victim's wife) testified that, shortly after the confrontation between the neighbors and the defendant and his brother, the latter two individuals burst into the Goldens' second-floor apartment armed with a bat and a board.[4] The defendant and his brother attacked Linda Golden, striking her repeatedly on the back and legs with the bat and board while threatening to kill her. Brian Golden eventually arrived in response to his wife's screams for help and chased the attackers out of his apartment, at some point arming himself with a kitchen knife. The defendant and his brother (and one or two other relatives, although the evidence is conflicting as to who arrived when) retreated up to the third floor where their mother lived. Some members of the Randolph family, including the defendant, threw household objects down toward the Goldens, who were still on the second-floor landing. Shortly afterward the defendant threw the knife that inflicted the fatal wound.

### B. *The Defendant's Version.*

According to the defendant's witnesses, the defendant, accompanied by his brother, Leroy, and his teenaged nephew, "Little Leroy," were attempting to reach the third floor. As they

---

Crim. P. 25 (b) (2), 378 Mass. 896 (1979). Review under rule 25 (b) (2) is substantially similar to review under G. L. c. 278, § 33E. See *Commonwealth v. Woodward,* 427 Mass. 659, 666-667 (1998). As this court has already refused to reduce the murder verdict to a lesser degree of guilt under § 33E, *Commonwealth* v. *Randolph, supra,* we cannot fault the motion judge's failure to do so under rule 25 (b) (2).

[4] Linda Golden's testimony was corroborated in part by the testimony of other witnesses.

climbed past the second-floor landing, Brian Golden emerged from his doorway, grabbed Leroy, and proceeded to drag him inside the Goldens' apartment. Leroy managed to escape with the help of his relatives, but not before Brian Golden had punched him several times in the face. Next, according to the defendant's version of events, Brian Golden grabbed a knife (or, in one account, a bat) and proceeded to chase the defendant and members of his family up toward the third floor, all the while threatening to kill them. The defendant, his brother, and his nephew all threw objects down the stairs to discourage pursuit. One of these objects was the knife that killed Brian Golden.

II. *Defendant's Motion for a New Trial.*

A. *Waiver.*

The defendant challenges the judge's jury instructions on murder in the first and second degrees, voluntary manslaughter, and intoxication.[5] The defendant did not object to these instructions at trial, and did not challenge them on direct appeal. *Commonwealth* v. *Randolph, supra* at 365. His claims are therefore waived. See *Rodwell* v. *Commonwealth*, 432 Mass. 1016, 1018 (2000), and cases cited ("If a defendant fails to raise a claim that is generally known and available at the time of trial or direct appeal or in the first motion for postconviction relief, the claim is waived"); Mass. R. Crim. P. 30 (c) (2), 378 Mass. 900 (1979).[6] A finding of waiver does not end the analysis, however. All claims, waived or not, must be considered.[7] The difference

---

[5]The defendant also challenges the judge's instructions on self-defense. This aspect of the defendant's claim was not certified for review by the single justice and is therefore not before us. See *Commonwealth* v. *Ambers*, 397 Mass. 705, 711 (1986); G. L. c. 278, § 33E.

[6]Rule 30 (c) (2) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 900 (1979), states: "All grounds for relief claimed by the defendant . . . shall be raised by the defendant in the original or amended motion. Any grounds not so raised are waived unless the judge in the exercise of discretion permits them to be raised in a subsequent motion, or unless such grounds could not reasonably have been raised in the original or amended motion."

[7]A defendant convicted of murder in the first degree who has been denied appellate relief under G. L. c. 278, § 33E, must seek leave for all subsequent appeals from a single justice of this court. *Lykus* v. *Commonwealth*, 432 Mass. 160, 162 (2000). The single justice "gatekeeper" has the discretion to deny applications for leave to appeal that do not raise a "new and substantial question." *Id.* G. L. c. 278, § 33E. An issue is not "new" under the statute if

lies in the standard of review that we apply when we consider the merits of an unpreserved claim.

At its core, the waiver doctrine states that a defendant must raise a claim of error at the first available opportunity. This requirement serves a dual purpose: it protects society's interest in the finality of its judicial decisions, *Commonwealth* v. *Amirault*, 424 Mass. 618, 637 (1997) ("The regular course of justice may be long, but it must not be endless"), and promotes judicial efficiency, *Commonwealth* v. *Pisa*, 384 Mass. 362, 366 (1981).

Although the public's interest in the finality of criminal convictions is weighty, it is not always paramount. "[W]e cannot rid ourselves by process alone of the possibility of error and of grave and lingering injustice." *Commonwealth* v. *Amirault, supra.* The doctrine of waiver incorporates a number of exceptions, which the Appeals Court, in a decision by Justice Armstrong, suggested may be divided into five categories. See *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 14-19 (1986). The first exception is review under G. L. c. 278, § 33E. When reviewing a conviction of murder in the first degree we are obligated to consider all issues apparent from the record, whether preserved or not, in order to determine whether there is a substantial likelihood of a miscarriage of justice in the verdict.[8] See *Commonwealth* v. *Ciampa*, 406 Mass. 257, 267-268 (1989).

The second exception is said to apply when the error creates "a substantial risk of a miscarriage of justice." *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967). This is actually not an exception, but a default standard of review. In all cases where a defendant fails to preserve his claim for review we must still grant relief when "we are left with uncertainty that the

---

it could have been addressed at trial or during a previous appeal. *Commonwealth* v. *Ambers, supra* at 707-708. The single justice allowed this defendant leave to advance certain issues and that exercise of discretion is final and unreviewable. See *Napolitano* v. *Attorney Gen.*, 432 Mass. 240, 241 (2000). The single justice's action does not, however, act to resurrect the defendant's waived claims or otherwise excuse the defendant from the procedural consequences of waiver. See *Mains* v. *Commonwealth*, 433 Mass. 30, 34 (2000).

[8]The substantial likelihood standard also applies when we review the denial of a preappeal motion for a new trial in a capital case. See *Commonwealth* v. *Nieves*, 429 Mass. 763, 770 (1999).

defendant's guilt has been fairly adjudicated." *Commonwealth v. Azar*, 435 Mass. 675, 687 (2002), quoting *Commonwealth v. Chase*, 433 Mass. 293, 299 (2001). The third is known as the "clairvoyance" exception, and applies to errors of a constitutional dimension "when the constitutional theory on which the defendant has relied was not sufficiently developed at the time of trial or direct appeal to afford the defendant a genuine opportunity to raise his claim at those junctures of the case." *Commonwealth v. Rembiszewski*, 391 Mass. 123, 126 (1984). In these circumstances we review the claim as if it had been properly preserved. *Id.*

A fourth exception comes into play when a defendant alleges (as this defendant has done) that his failure to preserve an issue stems from ineffective assistance of counsel, whether at trial or on appeal. See *Commonwealth v. Egardo*, 426 Mass. 48, 49-50 (1997). We have, at times, reviewed such claims under the standard of review normally applicable to ordinary ineffective assistance of counsel claims, rather than applying the "substantial risk" standard discussed previously.[9] *Id.* at 52. *Breese v. Commonwealth*, 415 Mass. 249, 252 (1993).

The arguably more lenient standard of review for waived claims alleging ineffective assistance of counsel has the potential to produce awkward results. Because virtually any omitted objection or argument can, at least on its face, be attributed to ineffective assistance of counsel, a wise defendant could in most cases opt for a more favorable standard of review simply by couching his waived claim in the language of ineffective assistance.[10] Our recent opinions have eliminated this problem by equating the ineffective assistance of counsel standard to the substantial risk standard in cases where waiver stems from an

[9]When evaluating a claim of ineffective assistance of counsel we ask whether there has been a "serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth v. Saferian*, 366 Mass. 89, 96 (1974).

[10]Exacerbating the problem is the fact that a particular class of defendants, indigent defendants who failed to raise an issue during a previous pro se collateral review, is categorically precluded from exploiting this tactical advantage. See *Mains v. Commonwealth*, 433 Mass. 30, 35-36 (2000).

omission by defense counsel. See *Commonwealth* v. *Azar, supra* at 686; *Commonwealth* v. *Peters*, 429 Mass. 22, 31 n.12 (1999) ("These two doctrines, in a case like this, are virtually coextensive . . ."). Thus, when a defendant alleges that his failure to preserve an issue for appeal stems from ineffective assistance of counsel, as this defendant has, we do not evaluate the ineffectiveness claim separately. If we determine that an error has been committed, we ask whether it gives rise to a substantial risk of a miscarriage of justice — ineffectiveness is presumed if the attorney's omission created a substantial risk, and disregarded if it did not.

The final exception, referred to as the "resurrection" exception, arises when the trial judge, on a motion for a new trial filed and considered before direct appeal, decides to consider an issue on the merits despite the defendant's failure to raise it at the proper time. In these circumstances we consider the issue as if it had been properly preserved. See *Commonwealth* v. *Hallet*, 427 Mass. 552, 554-555 (1998).

To summarize, when a trial judge addresses an unpreserved claim in a preappeal motion for a new trial, or when we determine that the "clairvoyance" exception applies because the state of the law was such that the defendant had no genuine opportunity to challenge the issue during prior proceedings, we review the claim as if it had been properly preserved. When we review an unpreserved claim on direct appeal from a conviction of first degree murder under § 33E, we consider whether the error caused a substantial likelihood of a miscarriage of justice. In all other circumstances, we grant relief only if we conclude that the waived error created a substantial risk of a miscarriage of justice.[11]

---

[11]On occasion we have declined to consider the merits in circumstances where we deem the defendant's conviction to be firmly settled. See *Commonwealth* v. *Valliere*, 437 Mass. 366 (2002) (no consideration of merits of defendant's sixth postdirect appeal motion); *Mains* v. *Commonwealth*, 433 Mass. 30 (2000) (no consideration on merits on appeal from denial of defendant's fifth motion for new trial); *Commonwealth* v. *Burnett*, 428 Mass. 469, 475 (1998), discussing *Hankerson* v. *North Carolina*, 432 U.S. 233, 244 n.8 (1977) ("States could 'insulate past convictions by enforcing the normal and valid rule that failure to object to a jury instruction is a waiver of any claim of error' ").

B. *Standard of Review.*

This defendant has been convicted of murder in the first degree and he has already sought § 33E relief and been denied. *Commonwealth* v. *Randolph*, 415 Mass. 364 (1993). Had he raised his current claims on direct appeal he would have received a more deferential review as required by statute. *Commonwealth* v. *Wright*, 411 Mass. 678, 682 n.1 (1992). As this case comes to us as an appeal from the denial of a motion for a new trial, however, the exception to waiver for § 33E review does not apply. *Id.* Nor do the so-called "clairvoyance" and "resurrection" exceptions have any application here. This is a postappeal motion for a new trial, and the defendant concedes that all the arguments advanced in this motion were available to either trial or prior appellate counsel.[12] Finally, the defendant's claims of ineffectiveness of counsel have no bearing on our inquiry. Because the alleged ineffectiveness amounts to nothing more than a failure to preserve claims for appeal, we need only ask whether those claimed errors produced a substantial risk of a miscarriage of justice. *Commonwealth* v. *Azar*, *supra* at 686-687.

A substantial risk of a miscarriage of justice exists when we have "a serious doubt whether the result of the trial might have been different had the error not been made." *Id.* at 687, quoting *Commonwealth* v. *LeFave*, 430 Mass. 169, 174 (1999). Errors of this magnitude are extraordinary events and relief is seldom granted. *Commonwealth* v. *Amirault*, *supra* at 646-647. Such errors are particularly unlikely where, as here, the defendant's conviction in a capital case has undergone the exacting scrutiny of plenary review under § 33E. Nevertheless, because the single justice allowed the defendant leave to appeal, we once again examine the defendant's convictions.

In analyzing a claim under the substantial risk standard, "[w]e review the evidence and the case as a whole," *Commonwealth*

---

[12]The defendant asserts that the law underpinning his challenge to the intoxication instruction given at trial was not firmly established until our decision in *Commonwealth* v. *Sama*, 411 Mass. 293 (1991). We do not reach this question because, even if this were true, it would not affect the standard of review applied to the defendant's current claim. The defendant's direct appeal was argued two years after our decision in *Sama* and appellate counsel's failure to raise the intoxication issue constitutes waiver. See *Rodwell* v. *Commonwealth*, 432 Mass. 1016, 1018 (2000).

v. *Azar, supra* at 687, and ask a series of four questions: (1) Was there error? *Id.* at 682-684. (2) Was the defendant prejudiced by the error? *Id.* at 687-688. (3) Considering the error in the context of the entire trial, would it be reasonable to conclude that the error materially influenced the verdict? *Id.* at 687-688. *Commonwealth* v. *Alphas*, 430 Mass. 8, 13-14 (1999). *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 21 (1986) ("Where evidence of guilt is strong and one-sided, it is generally concluded that no substantial risk exists of a miscarriage of justice"). (4) May we infer from the record that counsel's failure to object or raise a claim of error at an earlier date was not a reasonable tactical decision? See *Commonwealth* v. *Johnson*, 374 Mass. 453, 464-465 (1978). See also *Commonwealth* v. *Miranda, supra* at 22. Only if the answer to all four questions is "yes" may we grant relief.

C. *The Defendant's Claims of Error.*

1. *The provocation charge.* Applying the four-part analysis detailed above to the defendant's first claim of error, we readily conclude that the answers to the first, second, and fourth questions are "yes." The judge delivered an instruction that impermissibly shifted the burden of proving an absence of provocation from the Commonwealth to the defense.[13] This error is a substantial one, *Commonwealth* v. *McLaughlin*, 433 Mass. 558, 561 (2001), and in certain circumstances may give rise to a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Little*, 431 Mass. 782, 788 (2000); *Commonwealth* v. *Acevedo*, 427 Mass. 714, 717 (1998) (burden-shifting language was reversible error and may create substantial risk of

---

[13]The charge stated: "Therefore, after considering all of the evidence you find the Commonwealth has proven beyond a reasonable doubt that the circumstances preceding or attending the killing were caused by the adequate and reasonable provocation by the deceased, or by the act of sudden combat against the defendant of a kind so as to reasonably excite in him the passions of anger, fear, nervous excitement or heat of blood, and that thereupon the defendant upon the influence of such passion and before the cooling of the blood killed the deceased, then you are warranted in finding him guilty of voluntary manslaughter. If the Commonwealth has not met this burden, then you must find the defendant not guilty of voluntary manslaughter." The charge should have stated that the Commonwealth must prove beyond a reasonable doubt that the defendant did not act on reasonable provocation for the jury to find him guilty of murder. See *Commonwealth* v. *Acevedo*, 427 Mass. 714, 716 (1998).

miscarriage of justice). Cf. *Commonwealth* v. *Fickling*, 434 Mass. 9, 18-20 (2001) (totality of charge containing both correct and incorrect provocation instructions did not create substantial likelihood of miscarriage of justice).

In addition, the error prejudiced the defendant. A burden-shifting error in a provocation instruction is prejudicial if the defendant was entitled to such a charge, see *Commonwealth* v. *Acevedo*, *supra* at 717, and this defendant was so entitled. At trial, the defendant presented evidence that the victim violently attacked him with a bat, beat his brother, and chased the defendant with a knife, all immediately prior to the killing. Although the Commonwealth's witnesses presented a conflicting account of the incident, we do not attempt to weigh the evidence presented in determining whether a defendant was prejudiced by the instruction. See *Commonwealth* v. *Azar*, *supra* at 689 ("our role is not to sit as a second jury"). Instead, to make this determination, we examine the evidence in a light most favorable to the defendant. See *Commonwealth* v. *Little*, *supra* at 783, and cases cited. Given this standard, the Commonwealth concedes the need for a provocation instruction, and, in fact, we have required a provocation instruction on far less. See *id.* at 786-787 (escalating tension followed by movement as if to draw gun); *Commonwealth* v. *Berry*, 431 Mass. 326, 334-335 (2000) (exchange of words followed by blows with hands and then with beer bottle); *Commonwealth* v. *Acevedo*, *supra* at 715 (strike in calf with bat); *Commonwealth* v. *Boucher*, 403 Mass. 659, 661-662 (1989) (kick to head followed by continued attack).

We can also easily dispense with the possibility that the failure to preserve the *Acevedo* claim was attributable to a reasonable tactical decision. Trial counsel objected to other instructions after the jury charge, and appellate counsel challenged various instructions on direct review. We can see no valid tactical reason for challenging some instructions but not others. See *Commonwealth* v. *Azar*, *supra* at 689-690.

There remains the third question: is it reasonable to conclude that the judge's error, viewed in the context of the entire trial, influenced the ultimate verdict? The answer to this question must be "no." The fact that the jury found the defendant guilty

of murder in the first degree on a theory of deliberate premeditation does not itself resolve the question; a legally acceptable provocation can palliate a deliberately premeditated killing. See *Commonwealth* v. *Boucher, supra* at 662-663. Any fear that a miscarriage of justice occurred in this case, however, is dispelled by the other verdicts delivered by the jury. As an appellate court we do not sit as a second jury, see *Commonwealth* v. *Alphas, supra* at 20-23 (Greaney, J., concurring), but we must accept the fact finders' evaluation of witness credibility, as evidenced by their findings. See *Commonwealth* v. *Roderick,* 429 Mass. 271, 278-279 (1999).

In *Commonwealth* v. *Roderick, supra,* a defendant convicted of murder in the first degree challenged an erroneous provocation instruction. *Id.* at 278. There, as here, the defendant's version of the events leading up to the killing differed dramatically from the version presented by the Commonwealth's witnesses. The defendant testified that, in the wake of a drug deal gone awry, he was forced to shoot the victim in self-defense when the victim attacked him with a machete. *Id.* at 273. The Commonwealth's evidence indicated that the defendant broke into the victim's room demanding money and shot the victim when it was not forthcoming. *Id.* at 272-273. An examination of the evidence alone would have led us to conclude that the erroneous provocation charge prejudiced the defendant, because the defendant's testimony, if believed by the jury, would have entitled him to a correct instruction. We went further, however, and considered all the verdicts. *Id.* at 278-279. Noting that the jury convicted the defendant of felony-murder and armed assault with intent to rob, we stated that "[i]t is clear . . . that [the jury] did not accept the defendant's version of events but decided that it had been proved beyond a reasonable doubt that, even if the victim did come at the defendant with a machete, he did so in response to an armed robber forcing his way into his dwelling. Such a response to an attempted violent armed robbery cannot be considered legally adequate to provoke the robber into killing his intended victim." *Id.* at 278-279.

We are faced with a similar situation here. The defendant maintains that the victim was the aggressor, first ambushing and beating the defendant's brother and then chasing the defendant

with a knife while threatening him with death. The Commonwealth's witnesses, including the victim's wife, provide a vastly different account. The victim, they allege, entered his own apartment to find his wife being attacked by the defendant and his brother with a bat and a board.

The jury convicted the defendant not only of murder in the first degree but also of armed assault in a dwelling and assault and battery by means of a dangerous weapon on the victim's wife. We may therefore conclude that they must have rejected the testimony of the defendant's witnesses and believed beyond a reasonable doubt the testimony of the Commonwealth's witnesses regarding the circumstances leading up to the killing. It follows from this that the error in the provocation instruction could not have given rise to a miscarriage of justice: Brian Golden's response to a violent, armed assault on his wife in their dwelling cannot constitute provocation sufficient to mitigate a killing by the intruders.[14] See *id.* at 279. Cf. *Commonwealth* v. *Maskell*, 403 Mass. 111, 116-117 (1988) (manslaughter instruction required when defendant did not enter home and victim fired first shot).

2. *The malice instruction in the charge on murder in the first degree.* The murder charge was submitted to the jury on a theory of deliberate premeditation and the defense did not object to its form. The defendant now claims that the three prong malice instruction given by the judge was erroneous because a charge of murder in the first degree can only be sustained on a finding of malice based on a specific intent to kill.[15] *Commonwealth* v. *Jenks*, 426 Mass. 582, 585 (1998). This claim is easily answered; we find the risk of a miscarriage of justice to be insubstantial because the defendant was not prejudiced by the judge's error. Listing all three prongs of malice during the instruction on murder in the first degree is potentially confusing, *id.*, but where a judge's instructions on the deliberate premeditation element of murder in the first degree are "cor-

---

[14]The fact that the defendant murdered Brian Golden on his apartment landing, rather than inside his apartment, is not material.

[15]The judge later gave an instruction on murder in the second degree that referred the jury back to his previous description of malice.

rect, clear and emphatic," we have held that "a reasonable juror could only have understood that a guilty verdict . . . by reason of deliberate premeditation required a finding of purposeful conduct that included a finding beyond a reasonable doubt of a specific intent to kill." *Commonwealth* v. *Roberts*, 433 Mass. 45, 60 (2000), quoting *Commonwealth* v. *Jenks, supra* at 585. We have found that the deliberate premeditation language used by a trial judge accurately conveys the concept to the jury. See *Commonwealth* v. *Burke*, 414 Mass. 252, 266-267 (1993). Therefore, viewed as a whole, the instruction on murder in the first degree did not prejudice the defendant.[16] See *Commonwealth* v. *Simpson*, 434 Mass. 570, 588 (2001). Cf. *Commonwealth* v. *Johnson*, 435 Mass. 113, 119-122 (2001) (three prong malice instruction on murder in the first degree under deliberate premeditation theory created substantial likelihood of miscarriage of justice when second and third prongs of malice were also incorporated into deliberate premeditation instruction).

3. *The form of the malice instruction.* The defendant also faults (again, for the first time in his second motion) several aspects of the judge's description of the second and third prongs of malice. Again we fail to find a substantial risk of a miscarriage of justice. Examining the record as a whole we conclude that, because the jury found the defendant guilty of murder in the first degree on a theory of deliberate premeditation and therefore found a specific intent to kill beyond a reasonable doubt, any error in the judge's instructions on the second or third prong of malice could have had no effect on the trial's outcome. See *Commonwealth* v. *Simpson, supra* at 588 n.13; *Commonwealth* v. *Johnson*, 426 Mass. 617, 622-623 (1998).

4. *The intoxication instruction.* The defendant makes one final unpreserved claim: that the intoxication instruction given by the judge confused the jury as to whether intoxication could be

---

[16]The defendant notes that the judge omitted the words "cool reflection" from the premeditation instruction and mistakenly stated that deliberate premeditation "does *not* exclude action which is taken so spontaneously that there is not time to think about the action." The former is not error, *Commonwealth* v. *LeClair*, 429 Mass. 313, 318 (1999), and the latter, while clearly an error, was promptly corrected.

considered on the issue of premeditation.[17] The judge instructed the jury that voluntary intoxication is not an excuse for a crime immediately after giving an instruction stating that the jury could consider evidence of intoxication in deciding whether or not the defendant had the requisite intent. The instructions were correct statements of the law and given in the proper sequence. See *Commonwealth* v. *Henson*, 394 Mass. 584, 593-594 (1985) ("the judge should instruct the jury . . . that they may consider evidence of the defendant's intoxication at the time of the crime in deciding whether the Commonwealth has proved that specific intent beyond a reasonable doubt. If the judge gives such an instruction, he should further instruct the jury that . . . the defendant's intoxication, if any, is not an excuse or justification for his actions"). Although the phraseology of the second instruction might conceivably have confused the issues of intent and culpability, the judge clarified the charge by stating, "if you're satisfied upon the evidence that the defendant killed the deceased but he was incapable of conceiving a[n] . . . intention to kill because of intoxication, then he is not guilty of murder in the first degree." The intoxication instructions, viewed as a whole, clearly and correctly conveyed the applicable law. See *Commonwealth* v. *Moses*, 436 Mass. 598, 604 (2002). There was no error and thus no substantial risk of a miscarriage of justice.

*Order denying motion for a new trial affirmed.*

---

[17]The defendant also challenges the intoxication instruction as it relates to the third prong of malice. Because, as we noted earlier, the jury found a specific intent to kill beyond a reasonable doubt, there is no need to reach this issue.