NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-828

COMMONWEALTH

vs.

DAVID NAVARRO.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial, the defendant was convicted of operating a motor vehicle while under the influence of intoxicating liquor (OUI) and operating a motor vehicle after a suspension of license.  On appeal, he claims there was insufficient evidence to support his convictions and that the prosecutor's closing argument created a substantial risk of a miscarriage of justice.  We affirm the judgment of conviction of OUI and remand the case for the entry of a judgment of not guilty on the charge of operating a motor vehicle after suspension.

1.  Sufficient evidence of OUI.  The defendant claims that there was insufficient evidence to support his conviction for OUI where the Commonwealth failed to prove that he operated the motor vehicle in question.  We disagree.  "When analyzing

whether the record evidence is sufficient to support a conviction, an appellate court is not required to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' . . . Rather, the relevant 'question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting . . . Jackson v. Virginia, 443 U.S. 307, 319 (1979)." Commonwealth v. Rocheteau, 74 Mass. App. Ct. 17, 19 (2009).

When evaluating sufficiency, the evidence must be reviewed with specific reference to the substantive elements of the offense. See Jackson, 443 U.S. at 324 n.16; Latimore, 378 Mass. at 677-678. In the circumstances of this case, to establish the defendant's guilt of OUI, in violation of G. L. c. 90, § 24 (1) (a) (1), the Commonwealth was required to prove that the defendant (1) operated a motor vehicle, (2) on a public way, (3) while under the influence of alcohol. Commonwealth v. Hallinan, 491 Mass. 730, 733 (2023). Here, as noted above, the defendant challenges only the first element.

In the light most favorable to the Commonwealth, the evidence demonstrated that on June 16, 2019, at around 12:50 A.M., the Wrentham police responded to a telephone call, which

2

had reported that a possibly impaired driver was at a local gas station. When the officer arrived at the gas station, he saw the defendant leave the gas station building and stumble toward a car with a flat front tire that was parked at the gas pump. The car had a registration number that matched what had been reported by the tipster. As he stood next to the car, the defendant was swaying, and he dropped one hundred dollars' worth of ten- and twenty-dollar bills on the ground. When asked, the defendant told the police officer that the car was not his, that his friend had dropped him off, and he was waiting for his friend to return. The officer could not locate the friend in the store, and there was no one other than the defendant at the scene who may have been in the vehicle.

The car was registered to the defendant's father, and the car's keys were in the defendant's pocket. Based on the defendant's conduct and appearance, the officer believed he was intoxicated. The defendant was arrested for OUI, brought to the police station, and booked. At trial, the Commonwealth entered in evidence the registry of motor vehicles notice of suspension addressed to the defendant at 525 Hunt Street, Central Falls, Rhode Island. The notice was sent to the defendant on June 21, 2019.

From the evidence that the car was registered to the defendant's father, the defendant's possession of the keys, the

3

absence of anyone else in the area who could have been in the vehicle, and the defendant's implausible explanation for how he got to the gas station, the jury were entitled to draw the reasonable inference that he operated the car. See Commonwealth v. Petersen, 67 Mass. App. Ct. 49, 52 (2006) ("Proof of operation of a motor vehicle may rest entirely on circumstantial evidence" [quotation and citation omitted]). While one could infer, albeit implausibly, that the defendant was not the operator, it is of no assistance to the defendant. "To the extent that conflicting inferences are possible from the evidence, 'it is for the jury to determine where the truth lies.'" Commonwealth v. Wilborne, 382 Mass. 241, 245 (1981), quoting Commonwealth v. Amazeen, 375 Mass. 73, 81 (1978). See Commonwealth v. Drew, 4 Mass. App. Ct. 30, 32 (1976) ("Whether an inference is warranted or is impermissibly remote must be determined, not by hard and fast rules of law, but by experience and common sense").

Finally, the defendant claims that because the circumstantial evidence "tends equally to sustain either of two inconsistent propositions . . ., neither of them can be said to have been established by legitimate proof . . . [and] [a] verdict in favor of the party bound to maintain one of those propositions against the other is necessarily wrong" (citation

omitted).  Commonwealth v. Shea, 324 Mass. 710, 713 (1949).  We disagree.

The "equal and inconsistent" concept does not apply to the circumstances of this case.  The concept applies, if at all, "to situations in which any view of the Commonwealth's evidence, however favorable, still requires a leap of conjecture with respect to essential elements of the crime charged in order to obtain a conviction."  Commonwealth v. Latney, 44 Mass. App. Ct. 423, 426 (1998).

Here, the jury's conclusion that the defendant was the operator did not require a leap of conjecture given the reasonable inferences enumerated above.  The defendant's theory of innocence, supported by the fact that the car was off, not registered to him, and his assertion that his never-appearing friend was the operator, is simply not in equipoise with the Commonwealth's evidence.  See Commonwealth v. Hernandez, 77 Mass. App. Ct. 259, 265 (2010).  Rather, the defendant's claim simply asks that we view the evidence and weigh the inferences in his favor, but this we cannot do.  Commonwealth v. Arias, 78 Mass. App. Ct. 429, 435 (2010).

2.  Evidence of operating after suspension.  The defendant also claims that the Commonwealth failed to prove that there was sufficient evidence to support his conviction of operating a

5

motor vehicle after notice of suspension of his license.  The Commonwealth concedes this to be true, and we agree.[1]

Pursuant to G. L. c. 90, § 23, to establish operation after a license has been revoked or suspended, the Commonwealth must prove the defendant (1) operated a motor vehicle, (2) at the time of that operation the defendant's license was revoked or suspended; and (3) that the defendant had received notice that his license had been or was about to be suspended or revoked. Commonwealth v. Royal, 89 Mass. App. Ct. 168, 170 & n.3 (2016). Relative to the third element, to establish proper notice, the Commonwealth need only show that the registry of motor vehicles properly mailed the notice.  Commonwealth v. Lora, 43 Mass. App. Ct. 136, 143 (1997).  Here, the documentary evidence indicates that the notice to the defendant of the suspension was mailed to him after the date of the offense.[2]  In this light, the evidence was insufficient.

---

[1] We note that the defendant's conviction for operating after suspension was placed on file.  Ordinarily, this would have precluded appellate review, if the judge had complied with Mass. R. Crim P. 28 (e), 453 Mass. 1501 (2009).  See Commonwealth v. Delgado, 367 Mass. 432, 438 (1975).  As the record before us does not reflect such compliance, and the Commonwealth does not claim otherwise, we conclude that the defendant is entitled to appellate review of the conviction on the merits.

[2] Exhibit 1, which consisted of redacted registry of motor vehicles records, contained a 2013 notice of suspension, and a document indicating that notice was created on June 17, 2019 (the date after the offense occurred), and was received by the

3.  The prosecutor's closing argument.  Finally, the defendant claims that the prosecutor twice misstated the evidence in his closing argument.  Because the defendant did not object to the claims he now raises on appeal, we review to determine whether there was error, and if so, whether it created a substantial risk of a miscarriage of justice.

To determine whether the prosecutor's closing argument created a substantial risk of a miscarriage of justice, and keeping in mind that "[e]rrors of this magnitude are extraordinary events and relief is seldom granted," Commonwealth v. Randolph, 438 Mass. 290, 297 (2002), we ask four questions: "(1) Was there error?  (2) Was the defendant prejudiced by the error?  (3) Considering the error in the context of the entire trial, would it be reasonable to conclude that the error materially influenced the verdict?  (4) May we infer from the record that counsel's failure to object or raise a claim of error at an earlier date was not a reasonable tactical decision?" (Citations omitted.)  Id. at 298.  "Only if the answer to all four questions is 'yes,' may we grant relief." Id.  See Commonwealth v. Russell, 439 Mass. 340, 345 (2003); Commonwealth v. Coutu, 88 Mass. App. Ct. 686, 693 (2015).

_____

United States Postal Service on June 21, 2019, five days after the offense.

7

The two claimed misstatements occurred when the prosecutor argued that (1) the defendant "said [the car] belonged to his friend," and (2) that the defendant was "slurring his words." Relative to the first statement, the defendant is correct that there was no direct evidence that he told the officer the car belonged to his friend. However, the officer did testify that, when asked, the defendant told him the car was not his, "that his friend had dropped him off and that he was waiting for him to return."[3] Given this testimony, it was a fair inference from the evidence that the defendant had implied that the car belonged to his friend to deflect from the conclusion that the defendant had operated the car. Nonetheless, for purposes of our analysis, we will assume this was error. Relative to the second statement, the defendant is correct that there was no evidence offered that the defendant was "slurring his words." This was error.

Although we answer the first Randolph question "yes," and could easily do the same for question four, the answers to questions two and three stand on a different footing. The evidence supporting the defendant's guilt was quite strong, if not compelling. The defendant was seen stumbling as he walked

---

[3] The defendant also told the officer that he and "his friend were coming from a party in Attleboro and that [the defendant] believed he was still in Attleboro" when, in fact, he was in Wrentham.

to the car -- which the jury reasonably concluded he had been driving -- and he swayed as he stood next to the car, where he dropped on the ground approximately one hundred dollars in various bills. When the officer approached the defendant, his eyes were red, glassy, and bloodshot. From his breath, a strong order of alcohol emanated. While the officer spoke to him, the defendant swayed from side to side to a point where he had to steady himself by leaning on the crash barrier protecting the gas pump. He did not know what town he was in. Once the defendant was inside the police cruiser, a strong order of alcohol came from the defendant in the backseat area. The defendant's strong alcohol smell continued at booking where again he had trouble standing and swayed from side to side.

When we consider the above strong evidence supporting the jury's verdict that the defendant was guilty of OUI, in conjunction with the judge's jury instruction that closing arguments are not evidence,[4] we decline to conclude that the prosecutor's incorrect statements either unfairly prejudiced the defendant or that the errors materially influenced the verdict. Because we do not answer all four of the Randolph inquiries in

---

[4] The judge also instructed the jury that closing arguments are not substitutes for the evidence and are only provided to "assist [the jury] in understanding what the evidence is and the contention[s] of the parties." He also told the jury they were the "sole and exclusive judges of the facts," and that they must decide the case "solely on the evidence" admitted at trial.

9

the affirmative, the defendant has failed to establish that the two misstatements created a substantial risk that justice miscarried. See Randolph, 438 Mass. at 298; Coutu, 88 Mass. App. Ct. at 693. See also Commonwealth v. Dresser, 71 Mass. App. Ct. 454, 458 n.10 (2008) (it is defendant's burden to establish existence of substantial risk of miscarriage of justice).

4. Conclusion. The defendant's judgment of conviction of OUI is affirmed. The case is remanded to the District Court, where the order placing count two of the complaint on file is to be vacated. A judgment of not guilty on the count charging operating a motor vehicle after suspension shall enter for the defendant.

So ordered.

By the Court (Meade, Massing & Sacks, JJ.[5]),

Assistant Clerk

Entered: January 31, 2024.

---

[5] The panelists are listed in order of seniority.