NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1089

COMMONWEALTH

vs.

ANGEL CAMACHO.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This appeal is from the denial of the defendant's second motion for new trial, by which he sought to withdraw his 2013 guilty plea to possession of cocaine with the intent to distribute, and from the denial of his motion for reconsideration.  The defendant raises a variety of claims, none of which merit relief, and we affirm both orders.

1. Background.  In 2008, the defendant was indicted for, among other crimes,[1] trafficking in over 200 grams of cocaine. In 2009, he pleaded guilty to the lesser-included charge of

_____

[1] The defendant was also indicted for trafficking cocaine within one hundred feet of a public park, unlawfully distributing cocaine, and unlawfully distributing cocaine within one hundred feet of a public park.

trafficking between twenty-eight and one-hundred grams of cocaine, and he was sentenced to six to eight years in state prison. Pursuant to the plea agreement, the Commonwealth filed a nolle prosequi on the remaining charges.

In 2012, the defendant filed a motion for new trial to withdraw his guilty plea based on Annie Dookhan's misconduct at the William A. Hinton State Laboratory. Dookhan had been the confirmatory chemist for the cocaine in this case. In 2013, with the Commonwealth's assent, the motion was allowed. At the same hearing, the defendant then pleaded guilty again, but this time to the even lesser reduced offense of possession of cocaine with the intent to distribute. This lesser offense did not carry a mandatory minimum sentence, and the defendant was sentenced to serve three and one-half years to three and one-half years and one day, which was deemed served at the time of the plea.

As part of this guilty plea, in addition to signing a traditional waiver of rights form, the defendant signed a "Dookhan-specific" waiver, which provided, in relevant part:

> "I am also waiving, after discussion with my lawyer, the right to file a motion to vacate this guilty plea based on information that may come to light in the future about the state laboratory. . . . I understand that if I agree to plead guilty and if I do in fact plead guilty that I am agreeing to give up and waive my right to an appeal. I understand that I am giving up my right to appeal from my conviction."

2

By signing this waiver, the defendant waived his right to challenge his guilty plea based on the Hinton Lab scandal.

Despite that waiver, in 2018, the defendant filed a motion for new trial, this time to withdraw his 2013 guilty plea. In this motion, he claimed that Bridgeman v. District Attorney for the Suffolk Dist., 471 Mass. 465, 477 (2015) (Bridgeman I), S.C., 476 Mass. 298 (2017) (Bridgeman II), should be applied retroactively to him, which would invalidate his plea because it was made under the threat of his original charges and not under the protection of the Bridgeman I sentencing cap. The motion judge did not reach this claim. Instead, based on the defendant's Dookhan-specific waiver, she denied the motion.

In Commonwealth v. Camacho, 483 Mass. 645 (2019), the Supreme Judicial Court affirmed the denial of the motion but did so on different grounds. The court held that because the defendant ultimately "was not subjected to harsher punishment the second time around -- precisely what later would be required by the then-undecided Bridgeman I" decision, id. at 652, and because the charge was reduced from the original charge of trafficking to possession with intent to distribute and his sentence was reduced to time served, the defendant "essentially received the protection of the Bridgeman sentence cap." Id. at 653. The court did not address the validity of the Dookhan-specific waiver. Id. at 653 n.6.

3

Undeterred, in 2022, the defendant filed a second motion for new trial to withdraw his 2013 guilty plea. This motion raised several issues discussed below. The defendant properly concedes that all but the last claim are waived because they could have been raised in his 2018 motion for new trial. In 2023, a Superior Court judge denied the motion without a hearing, and later denied a motion for reconsideration.[2]

2. Discussion. "A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." United States v. Broce, 488 U.S. 563, 569 (1989). "A motion to withdraw a guilty plea is treated as a motion for a new trial under Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001)." Commonwealth v. Furr, 454 Mass. 101, 106 (2009). "A strong policy of finality limits the grant of new trial motions to exceptional situations, and such motions should not be allowed lightly." Commonwealth v. Gordon, 82 Mass. App. Ct. 389, 394 (2012). See Commonwealth v. Lopez, 426 Mass. 657, 662-663 (1998). Nonetheless, "[u]nder Mass. R. Crim. P. 30 (b), a judge may grant a motion for a new trial any

---

[2] Despite noticing an appeal from the denial of his motion to reconsider, the defendant's brief mentions that denial in a single sentence that does not suffice as an appellate argument. See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).

time it appears that justice may not have been done.  A motion for a new trial is thus committed to the sound discretion of the judge."  Commonwealth v. Scott, 467 Mass. 336, 344 (2014).  See Commonwealth v. Hunt, 73 Mass. App. Ct. 616, 619 (2009).  Also, the defendant "bears the burden of proof on a motion for a new trial."  Commonwealth v. Marinho, 464 Mass. 115, 123 (2013).

Finally, claims that could have been raised in a prior motion for new trial, but were not, are treated as waived.  See Commonwealth v. Balliro, 437 Mass. 163, 166 (2002).  See also Commonwealth v. Deeran, 397 Mass. 136, 139 (1986) (defendant must raise all reasonably available grounds for relief in first motion pursuant to Mass. R. Crim. P. 30 [b] or "those claims are lost"); Mass. R. Crim. P. 30 (c) (2), as appearing in 435 Mass. 1501 (2001) ("All grounds for relief claimed by a defendant . . . shall be raised by the defendant in the original or amended motion [for a new trial].  Any grounds not so raised are waived").  A defendant's waived claims are reviewed only to determine if error occurred, and if so, whether it created a substantial risk of a miscarriage of justice.  See Commonwealth v. Randolph, 438 Mass. 290, 293-295 (2002).  "Errors of this magnitude are extraordinary events and relief is seldom granted."  Id. at 297.

A.  Ineffective assistance of counsel.  The defendant claims that neither his original plea counsel (counsel 1), nor

his 2013 plea counsel (counsel 2), ever discussed the immigration consequences of his guilty pleas.[3] In these circumstances, "the defendant bears the burden of showing that his attorney's performance fell 'measurably below that which might be expected from an ordinary fallible lawyer,' and that he suffered prejudice because of his attorney's unprofessional errors." Commonwealth v. Lavrinenko, 473 Mass. 42, 51 (2015), quoting Commonwealth v. Clarke, 460 Mass. 30, 45 (2011), abrogated on other grounds by Chaidez v. United States, 568 U.S. 342 (2013). See Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). To satisfy the first prong, the defendant must demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Clarke, supra at 47, quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985).

In addition, the defendant must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Clarke, 460 Mass. at 47, quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010).

---

[3] The defendant further claimed in his affidavit that he was not informed by any of his previous attorneys that his conviction in this case was considered an "aggravated felony" for immigration purposes and thus "would bar almost every form of defense to removal" and ensure that he "would be deported to Colombia." Neither of his attorneys, however, was able to substantiate those assertions.

6

"To prove the latter proposition, the defendant bears the substantial burden of showing that (1) he had an 'available, substantial ground of defence' . . . that would have been pursued if he had been correctly advised of the dire immigration consequences attendant to accepting the plea bargain; (2) there is a reasonable probability that a different plea bargain (absent such consequences) could have been negotiated at the time; or (3) the presence of 'special circumstances' that support the conclusion that he placed, or would have placed, particular emphasis on immigration consequences in deciding whether to plead guilty" (footnote omitted).

Clarke, supra at 47-48, quoting Saferian, 366 Mass. at 96, and Hill, 474 U.S. at 60.

As the motion judge determined, counsel 2 understandably expected that immigration consequences would have been handled by original plea counsel (on the much more serious drug trafficking charges), and he conducted no further inquiry into the defendant's immigration status at the time of the 2013 plea, nor did he investigate any potential avenues of relief from any immigration consequences at that time on the reduced drug charge.

At the time of the original plea, counsel 1 determined that the defendant was not a United States citizen, and that the plea would, in fact, produce negative immigration consequences for him. However, counsel 1 stated much later that he does not "recall" having a "specific discussion" with the defendant about deportation consequences. As the motion judge properly held, counsel 1's failure to "recall" does not establish a likelihood

7

that such a discussion did not occur.  See Lopez, 426 Mass. at 665.  Nevertheless, although the motion judge found it "extremely unlikely" that counsel did not discuss removal proceedings, he determined (and we will assume) that the defendant did not receive constitutionally sufficient immigration advice.

However, as the motion judge properly held, the defendant failed to establish that rejecting the plea would have been rational under the circumstances.  First, the defendant did not demonstrate that he had a substantial ground of defense that he would have pursued if he had been equipped with proper advice. The police witnessed the defendant sell cocaine, and later seized from the car the defendant was driving at least 200 grams of cocaine and other items that were consistent with the drug trade.[4]  Although Dookhan was the confirmatory chemist, and thus, initial certification testing could not have been used as evidence, there is nothing in the record indicating that the drugs seized could not have been retested.  Moreover, there was other circumstantial evidence that showed that the substance seized was cocaine, including the car passenger's statement to police that he had bought cocaine from the defendant in exchange

_____

[4] In addition, after police stopped the van the defendant was driving, he got out and spontaneously stated, "I have no drugs."

8

for $200.  Contrast Commonwealth v. Sepheus, 468 Mass. 160, 165-167 (2014).

Second, there was not a reasonable probability that a different plea bargain could have been negotiated at the time.[5] The bargain the defendant did obtain provided him a very lenient sentence, which was deemed served.  If he had taken the risk of going to trial, and was found guilty, the defendant would have received a minimum mandatory sentence of at least twelve years and up to twenty years in state prison.  See Commonwealth v. Pike, 53 Mass. App. Ct. 757, 763 (2002); G. L. c. 94C, § 32E (b) (4).  Also, any plea deal the defendant reasonably could have negotiated would have resulted in a conviction for an aggravated felony, thereby subjecting the defendant to the same dire immigration consequences.  See 8 U.S.C. § 1101(a)(43)(B) (illicit trafficking in a controlled substance is an aggravated felony).

Third, as the motion judge held, the defendant did not demonstrate the presence of "special circumstances" showing that he "placed, or would have placed, particular emphasis on immigration consequences in deciding whether to plead guilty." Commonwealth v. DeJesus, 468 Mass. 174, 183 (2014).  In his affidavit, the defendant claimed to have been a victim of

_____

[5] The defendant does not argue otherwise.

9

extortion and threats of violence to his family, that he had been in the United States since 2002, and that he considered Boston to be his home with his wife and children.  The motion judge expressly discredited the defendant's self-serving averments, which was well within his discretion to do.[6]

In summary, the defendant did not establish "special circumstances," nor that it would have been rational to reject the plea bargain under the circumstances.  Accordingly, the defendant failed to establish ineffective assistance of counsel.[7] As a result, and because the claim is waived, there was no risk that justice miscarried.[8]

B.  The immigration warning.  The defendant also claims that the plea judge provided an inadequate immigration warning

---

[6] The defendant offered no affidavits from his wife, son, or daughter, nor did he make any other showing that he is a primary caregiver, that his family is dependent on him for financial support, or that he has unique needs.  See Commonwealth v. Rodriguez, 101 Mass. App. Ct. 54, 59-60 (2022).

[7] In this posture, the defendant did not establish his claim that counsel was ineffective by not raising the same issues in the 2018 motion for new trial.  See Commonwealth v. Curtis, 417 Mass. 619, 624 n.4 (1994) (if counsel's omission does not present substantial risk of a miscarriage of justice, no basis for ineffective assistance of counsel claim).

[8] The defendant also claims that counsel 2 was ineffective due to his lack of preparation for the 2013 plea hearing.  As the motion judge determined, and contrary to the defendant's claim, the record shows that counsel 1 correctly considered the case against the defendant to be triable.  Given what counsel 2 then knew, his representation of the defendant was competent, and he negotiated a favorable disposition for the defendant.

pursuant to G. L. c. 278, § 29D.  This claim is also waived, as it could have been raised in the defendant's first motion to withdraw his 2013 guilty plea.  Accordingly, we review to determine if error occurred, and if so, whether it created a substantial risk of a miscarriage of justice.  See Randolph, 438 Mass. at 293-295.

A defendant pleading guilty must be advised as follows:

"If you are not a citizen of the United States, you are hereby advised that the acceptance by this court of your plea of guilty, plea of nolo contendere, or admission to sufficient facts may have consequences of deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States."

G. L. c. 278, § 29D.  See Commonwealth v. Petit-Homme, 482 Mass. 775, 779 (2019); Commonwealth v. Hilaire, 437 Mass. 809, 819 (2002).

Here, the plea judge warned the defendant as follows:

"Now, Mr. Camacho, I want to make sure you understand that if you are not a citizen of the United States, a guilty finding here would affect your status in the country including -- including certain deportation, the denial of naturalization, and exclusion from admission to the United States if you were to leave the country and try to come back in.  Do you understand that?"

The defendant stated that he understood the immigration consequences, and when asked, he told the judge he still wanted to plead guilty.

The defendant's claimed inadequacy is not that he was not warned of the potential immigration consequences.  Contrast

11

Hilaire, 437 Mass. at 818 (judge failed to "advise the defendant of the three immigration consequences that might result from his admission").  Instead, he claims that the plea judge erred by advising him that "a guilty finding here would affect your status in the country," rather than using the statutory language of "your plea of guilty . . . may have consequences of deportation, exclusion from admission . . . pursuant to the laws of the United States."  According to the defendant, "a reasonable non-English-speaking defendant would understand" this slight change in language "to mean that a guilty finding after trial would result in 'certain deportation.'"  We disagree.

Although judges are not required to read the § 29D warning verbatim, it is certainly the better practice to do so, but we nonetheless hold that the judge essentially did so in this case. See Commonwealth v. Lamrini, 27 Mass. App. Ct. 662, 667 (1989). Despite his assertion that a language barrier affected his understanding of the warning he received, the defendant's plea was taken with the assistance of an interpreter, whom the defendant expressly told the plea judge that he understood. Furthermore, the defendant's affidavit in support of the motion for new trial is silent on this claimed misunderstanding that appears in his brief.  In any event, as the motion judge determined, the plea judge "was advising [the defendant] in the context of his new, second guilty plea in this case, and her

12

specific reference to a 'guilty finding here' could only be interpreted to mean the subject plea."  There is no support for the defendant's claim.  Accordingly, there was no error, and thus, there was no risk that justice miscarried.

C.  The Dookhan-specific waiver.  The defendant signed a Dookhan-specific waiver as part of his 2013 guilty plea, which waived his right to challenge the guilty plea based on the Hinton Lab scandal.  In his 2018 motion for a new trial, the defendant claimed that the waiver was void as against public policy.  On appeal, as noted above, the Supreme Judicial Court did not reach the issue of the waiver.  See Camacho, 483 Mass. at 653 n.6.

In his second motion for new trial to withdraw his 2013 guilty plea, the defendant again challenges the validity of the waiver but on different grounds.  Now he claims that that the waiver is unenforceable because it violates Mass. R. Prof. C. 3.8 (h), as appearing in 473 Mass. 1301 (2016).  This claim is waived as well, and devoid of merit.

Rule 3.8 (h) states that a prosecutor in a criminal case shall "refrain from seeking, as a condition of a disposition agreement in a criminal matter, the defendant's waiver of claims of ineffective assistance of counsel or prosecutorial misconduct."  Mass. R. Prof. C. 3.8 (h).  The defendant claims in his briefing that, in Bridgeman II, the Supreme Judicial

13

Court held that "Dookhan's misconduct was deemed prosecutorial misconduct, as it was 'attributable to the government' for purposes of a motion for a new trial" (emphasis added). However, this assertion mischaracterizes the court's holding in Bridgeman II. Indeed, what the court actually held was that "[i]n light of the massive number of relevant Dookhan defendants and the scope of misconduct attributable to the government (albeit not to the prosecutors), it is only fair that district attorneys make an individualized determination whether a conviction warrants burdening the court system with the adjudication of a motion for a new trial" (emphasis added). Bridgeman II, 476 Mass. at 328.

Furthermore, while the defendant is correct that the Supreme Judicial Court stated in Commonwealth v. Cotto, 471 Mass. 97, 109 (2015), that Dookhan "was an agent of the prosecution team," it did so only in the context of concluding that Dookhan "was an agent of the Commonwealth whose misconduct was attributable to the government for the limited purposes of the Ferrara analysis" (emphasis added). Id., citing Commonwealth v. Scott, 467 Mass. 336, 349-350 (2014). That is, Dookhan was a Hinton Lab chemist qua Commonwealth, and the import of rule 3.8 (h) only pertains to prosecutors qua prosecutors. As the motion judge properly determined, the waiver targets the Hinton Lab scandal, not the prosecutors in

14

this case, and the waiver does not violate rule 3.8 (h).

Because there was no error, there is no risk that justice

miscarried.

D.  Bridgeman II and the Hinton Lab Initiative.  Finally,

the defendant claims that the Fourteenth Amendment's Equal

Protection Clause entitles him to the remedy provided to

thousands of similarly situated Dookhan defendants under

Bridgeman II and the Hinton Lab Initiative,[9] whose convictions

were vacated and dismissed with prejudice.  We disagree.

The "equal protection mandate is essentially a direction

that all persons similarly situated should be treated alike."

Moore v. Executive Office of the Trial Court, 487 Mass. 839, 848

(2021) (quotation omitted).  "An equal protection claim can only

succeed if a plaintiff establishes that government action

---

[9] The 2021 Hinton Lab Initiative was created by the Suffolk
County District Attorney's Office to establish a broad remedy
for criminal defendants subject to drug convictions resulting
from analyses done at the Hinton Lab between 2003 and 2012.
Under this program, as a matter of discretion, the District
Attorney would classify every Hinton Lab drug conviction,
regardless of the chemist that performed the analysis, as a
"List Two" case under the Bridgeman I protocol.  "List Two"
convictions are those that the District Attorney moved to vacate
and dismiss with prejudice as part of her individualized review
following the Bridgeman I protocol.  As an exercise of
discretion, the District Attorney endeavored to treat every
defendant with a Hinton Lab drug conviction in the same manner
as "List Two" individuals, i.e., their convictions would be
vacated and dismissed with prejudice.

15

discriminates against similarly situated persons." DuPont v. Commissioner of Correction, 448 Mass. 389, 399 (2007).

Here, the defendant claims that because he moved to withdraw his 2013 plea during the early years of the Hinton Drug Lab scandal, he was "disadvantaged relative to the thousands of Dookhan defendants whose cases were summarily vacated and dismissed pursuant to Bridgeman II." However, this claim is barred due to the Dookhan-specific waiver he signed, which precludes the defendant from challenging his plea based on Dookhan's misconduct and any "information that may come to light in the future about the state laboratory."

Even if the claim was not precluded by his Dookhan-specific waiver, the claim itself is waived and it is without merit. As the motion judge properly held, because Bridgeman II was decided in 2017, and this claim was not raised in the 2018 motion for new trial, it, too, is waived. See Deeran, 397 Mass. at 139; Mass. R. Crim. P. 30 (c) (2).

Furthermore, there is no risk that justice miscarried where the Supreme Judicial Court's decision in Bridgeman II suggests the "relevant Dookhan defendants" do not include those "who already moved to vacate their pleas." Bridgeman II, 476 Mass. at 309 n.11. By the time the court decided Bridgeman II in 2017, the defendant's case had already been decided in the Superior Court as a result of his 2013 guilty plea. See

16

Commonwealth v. Cabrera, 449 Mass. 825, 830 (2007) ("A guilty plea, once accepted, leads to a final judgment of conviction; like a verdict of guilty, it is conclusive").  After that, he obtained even further relief as a result of his 2018 motion for new trial.  Bridgeman II relief is not available to this defendant.  Accordingly, the defendant is not similarly situated with those who received relief under Bridgeman II.

Finally, although not waived, the defendant's claim that to not provide him relief courtesy of the Hinton Lab Initiative would violate the Equal Protection Clause suffers a similar fate.  As the motion judge properly determined, the defendant has not demonstrated that other Dookhan defendants receiving the benefits of the Hinton Lab Initiative signed Dookhan-specific waivers, such as the one he signed, whereby he specifically waived his right to challenge his guilty plea based on the Hinton Lab scandal.  In this posture, the defendant has failed to establish that he is similarly situated to the defendants who

benefitted from the District Attorney's exercise of discretion. See DuPont, 448 Mass. at 399.

Order denying motion for new trial affirmed.

Order denying motion for reconsideration affirmed.

By the Court (Meade, Englander & Hodgens, JJ.[10]),

Assistant Clerk

Entered: June 5, 2024.

[10] The panelists are listed in order of seniority.

18